William M. RODECK and Rosemarie M. Rodeck, Plaintiffs,

v.

UNITED STATES of America, State of Minnesota, and Jeannine Mary Viray, Defendants.

Civ. No. 4–87–1009.

United States District Court, D. Minnesota, Fourth Division.

Oct. 18, 1988.

Gregory S. Malush, Hyatt Legal Services, Golden Valley, Minn., for plaintiffs.

Jerome G. Arnold, U.S. Atty., and Mary Jo Madigan, Asst. U.S. Atty., Minneapolis, Minn., Amy J. Sargent, Peter Taylor, Trial Attys., Dept. of Justice, Washington, D.C., for defendant U.S.

Lawrence E. Meuwissen, O'Connor & Hannan, Minneapolis, Minn., for defendant Jeannine Mary Viray.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

The parties have stipulated to the facts and present this case for resolution on cross motions for summary judgment. This interpleader action concerns a priority dispute between a federal tax lien and a vendor's interest in an executory contract for land. Summary Judgment will be granted in favor of Jeannine Mary Viray.

## FACTS

The United States claims tax liens on all property and rights to property belonging to Thomas J. Ponchik, a/k/a Thomas J. Shallon, by virtue of unpaid federal taxes plus statutory additions, in the amounts and for the periods indicated below:

| TYPE OF TAX | PERIOD ENDING | DATE ASSESSED | UNPAID BALANCE OF TAX ON 7/28/87 | ADDITIONS | TOTAL |
|---|---|---|---|---|---|
| 1040 | 12/31/80 | 09/14/81 | $42,919.67 | $ 2,874.20 | $45,793.87 |
| 1040 | 12/31/81 | 10/11/82 | 1,833.13 | 636.59 | 2,469.72 |
| 1040 | 12/31/82 | 11/21/83 | 1,480.71 | 160.81 | 1,641.52 |
| | | | | | $49,905.11 |

On August 7, 1980, Ponchik sold a parcel of residential property located in Hennepin County, Minnesota to William M. and Rosemarie Rodeck. Under the terms of the contract for deed, the Rodecks were to make monthly payments of $447.56, with a balloon payment coming due on August 15, 1987.

As noted above, the United States made assessments against Ponchik on September 14, 1981, October 11, 1982 and November 21, 1983. Subsequently, on May 11, 1984, a notice of federal tax lien was filed with the Milwaukee County Register of Deeds relative to those three assessments. At the time, Ponchik was in a federal prison in Minnesota. His last known address was a Milwaukee address listed on his 1982 income tax return. The United States Court of Appeals for the Eighth Circuit has found that a mailing to Ponchik's Milwaukee address was sufficient for the purpose of mailing the notice of deficiency required by 26 U.S.C. § 6212(a). *Ponchik v. Commissioner of Internal Revenue*, 854 F.2d 1127 (8th Cir.1988).

On July 18, 1984, the United States mailed a notice of levy to the Rodecks. The notice of levy was received on August 4, 1984 and, pursuant to the levy, the Rodecks began making their monthly payments to the Internal Revenue Service.

On August 15, 1984, Ponchik assigned his vendor's interest in the contract for deed to Jeannine Mary Viray in satisfaction of a child support obligation. About one year earlier, Viray had given birth to a daughter by Ponchik. *See* Affidavit of Paternity dated August 11, 1984. The assignment was recorded with the Hennepin County Recorder's Office on August 20, 1984. The instrument of assignment listed the value of Ponchik's interest as $49,675.26 and stated that Ponchik assigned his interest for "One Dollar and other good and adequate consideration." The minimum transfer tax, applicable to transfers involving $1,000.00 or less, was paid.

On January 4, 1985, a notice of federal tax lien was filed with the Hennepin County Recorder's Office.

The Rodecks filed this interpleader action on October 28, 1987. The interpleaded fund of $47,376.80 represents the balloon payment under the contract for deed. Pursuant to the Magistrate's Order of January 21, 1988, the Rodecks deposited an amount equal to the balloon payment with the Court and, in exchange, Viray has delivered the deed to the Rodecks. All that remains to be decided is the priority dispute between the United States and Viray.

## DISCUSSION

 Federal law determines the priority status among competing creditors where a federal tax lien is the basis of a government claim. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). A tax lien arises when a taxpayer fails to pay a tax liability after demand for payment. Under 26 U.S.C. § 6321, the tax lien attaches to "all property and rights to property" belonging to the taxpayer. The lien attaches at the time of assessment. *United States v. Vermont*, 377 U.S. 351, 355, 84 S.Ct. 1267, 1269–70, 12 L.Ed.2d 370 (1964). The lien need not be filed to be effective against the delinquent taxpayer or against third party claimants of the taxpayer's property except for those creditors and transferees specifically protected under section 6323(a), which provides that a federal tax lien will not be superior to four particular interests unless notice of that lien has been properly filed.

 The issues which must be decided in this case can be outlined as follows. Because Viray's interest in the fund arose after the tax lien had attached, Viray must first show that she qualifies for protection under section 6323(a) to establish priority relative to the tax lien. Viray claims to qualify for protection under section 6323(a) as a "purchaser." If Viray is a purchaser, she must then establish that her interest was perfected before notice of the federal tax lien was filed in accordance with section 6323(f). The tax lien will have priority over a purchaser if notice of the lien was filed before the purchaser perfected her interest.

■ Under section 6232(f), the manner and place of filing a notice of federal tax lien is determined by the nature of the property subject to the lien. Briefly stated, a notice of federal tax lien is effective against real property only if it is filed where the property is located. For personal property, a notice is effective if filed where the taxpayer resides at the time of filing. Because Viray's interest was perfected between the time the United States filed notice where Ponchik resides and the time it filed notice where the property is located, Viray's priority, as a purchaser, depends on whether her interest was one of reality or one of personalty.

Finally, the effect of the levy must be determined. The United States served a notice of levy on the Rodecks eleven days before Ponchik transferred his interest to Viray. The United States argues that a notice of levy is a second means of perfecting a federal tax lien. If the United States is correct, the notice of levy would serve to give the tax lien priority over Viray's subsequently created interest.

## I. *Whether Viray is a Purchaser Within the Meaning of Section 6323*

■ A federal tax lien arises on the date of assessment and, as of that date, is enforceable against all creditors except for the four types of creditors protected by 26 U.S.C. § 6323(a)—purchasers, holders of security interests, mechanics lienors, and judgment creditors. As to these four groups, a federal tax lien will have priority only if notice has been filed in accordance with section 6323(f).

Viray claims to qualify as a purchaser. Section 6323(h)(6) defines that term as follows:

> The term "purchaser" means a person, who for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under

local law against subsequent purchasers without actual notice.

■ Viray bears the burden of proving that she fits the statutory definition of purchaser. *Coventry Care, Inc. v. United States*, 366 F.Supp. 497, 500–01 (W.D.Pa. 1973). By recording the assignment, Viray made her interest valid against subsequent purchasers without notice. The United States argues however that Viray did not acquire her interest for "full and adequate consideration in money or money's worth."

Existing law furnishes little guidance on the measure of full and adequate consideration. The phrase "full and adequate consideration" was intended to change the former law which and had enabled persons to qualify as purchasers by paying amounts "so small as to have little relation to the value of the property acquired." Sen.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted at*, 1966 U.S. Code, Cong. & Admin.News 3722, 3735. "Full and adequate consideration" is interpreted by Treasury regulations to be an amount "having a reasonable relationship to the true value of the interest in property acquired." 26 C.F.R. § 301.6323(h)–1(f)(3). This standard may be satisfied by "a bona fide bargain purchase." *Id.*

The United States argues that the consideration which Viray received is not "full and adequate" by focusing on the representations made on the instrument of assignment, rather than the value of Ponchik's child support obligation. The instrument states that Ponchik assigned his interest for "One Dollar and other good and valuable consideration," and also indicates that the minimum transfer tax, applicable to transfers involving $1,000 or less, was paid. The instrument, however, also lists the value of Ponchik's interest as $49,675.26. Despite the latter fact, and despite the fact that the government has stipulated that Viray received Ponchik's interest in satisfaction of his child support obligation,[1] the government argues that the instrument of

---

1. While the stipulation of facts states only that Ponchik assigned his interest to Viray "in satisfaction of a child support obligation," Stipulation of Facts for Submission of Case on Cross- Motions for Summary Judgment, par. 8, the parties acknowledged at argument that the transfer was intended to satisfy any and all claims for child support.

assignment "clearly indicates that the value of the consideration given does not bear any relationship to the value of the property transferred." Memorandum in Support of United States Motion for Summary Judgment at 14.

■ The government's reliance on the statements in the instrument of assignment is misplaced. The value of the interest assigned is correctly stated and Ponchik's release from any obligation for child support plainly is "good and valuable consideration." Thus, the government's argument hinges on the statement of value implied from payment of the minimum transfer tax. Perhaps the statement was a misrepresentation on Viray's part. Even so, it will not serve to bind her in this action. The value of Ponchik's interest was $49,675.26, as listed, and that is approximately half of the estimated cost of raising a child in an urban area of the Midwest to age eighteen.[2] Therefore, by releasing all claims against Ponchik for child support in exchange for Ponchik's interest in the contract for deed, Viray furnished consideration having a reasonable relationship to the value of the property acquired.

■ The United States also argues that Viray did not provide consideration "in money or money's worth," as required by the statutory definition of purchaser. 26 U.S.C. § 6323(h)(6). Treasury regulations define "money or money's worth" as "money, a security …, tangible or intangible property, services, and other consideration reducible to a money value." 26 C.F.R. § 301.6323(h)–1(a)(3). The United States argues that the consideration Viray gave is not reducible to a money value, relying on *Fritz v. United States*, 328 F.Supp. 1343 (D.Minn.1971). In *Fritz*, a taxpayer's former wife was assigned the wages and bonuses payable by the taxpayer's former employer in consideration for the taxpayer's release from jail. 328 F.Supp. at 1344. The taxpayer was being held on a writ of *ne exeat*, obtained to prevent the taxpayer from leaving the country and defeating his

wife's claim for delinquent alimony and child support. *Id.* The United States asserted a claim to the taxpayer's wages and bonuses under a federal tax lien. *Id.* Although the United States had filed effective notice of the lien, under the law then existing the wife had priority if she had acquired her interest "for full and adequate consideration in money or money's worth" without actual notice of the tax lien. *Id.* at 1345. The court concluded, without any analysis, that the wife's agreement to release the taxpayer from custody in return for the assignment of his wages and bonuses did not constitute either "full and adequate consideration" or "money or money's worth." *Id.* at 1345–46.

*Fritz* is not analogous to this case. Although the assignment of the taxpayer's wages and bonuses was ultimately for the purpose of satisfying the taxpayer's alimony and child support obligations, the assignment was not the result of a bargain freely struck because of the writ's coercive effect. The taxpayer in *Fritz* was negotiating for his liberty. Unlike a person's interest in liberty, child support obligations are sadly, but obviously, reducible to a money value. Thus, Viray did provide "full and adequate consideration" in money or money's worth and qualifies as a purchaser under section 6323(a).

## II. *Whether Viray's Interest is in Real or Personal Property*

Under 26 U.S.C. § 6323(a), a federal tax lien is not valid against a purchaser until notice of the lien has been filed in accordance with the requirements of section 6323(f). That section, at (f)(1)(A)(i) and (ii), provides that notice shall be filed in the office designated by the state "in which the property subject to the lien is situated." Under section 6323(f)(2)(A), real property is deemed situated "at its physical location." Under the companion provision, section 6323(f)(2)(B), personal property is deemed situated "at the residence of the taxpayer at the time the notice of lien is filed."

---

**2.** This estimated cost is $95,933.00, as noted in United States Dep't of Agriculture, *Family Eco-* *nomics Review*, No. 2 at 36 (1988).

In this case, the United States filed a notice of federal tax lien with the Milwaukee County Register of Deeds, the office designated by Wisconsin, the state of Ponchik's residence, on May 11, 1984. Viray received her interest in the contract for deed on August 15, 1984 and perfected that interest five days later. Subsequently, on January 4, 1985, the United States filed a notice of federal tax lien with the Hennepin County Recorder's Office, the office designated by Minnesota, the state where the land is located. Whether the notice filed in Milwaukee perfected the government's interest before the assignment depends on whether a vendor's interest in a contract for deed is realty or personalty.

■ Priority conflicts involving federal tax liens are governed by federal law, but state law controls in determining the nature of the legal interest in the property at stake. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). Minnesota defines real property as "[e]states of inheritance and for life." Minn.Stat. § 500.05. This definition encompasses a vendor's interest in an executory contract for land. *In re Consolidation of School Districts,* 146 Minn. 403, 178 N.W. 892 (1920). The United States argues however that the doctrine of equitable conversion operates to convert that interest into personal property.

■ In Minnesota, while the vendor of a contract for deed retains legal title to the property, the vendee has equitable title. *Romain v. Pebble Creek Partners,* 310 N.W.2d 118, 120 (Minn.1981). Thus, through the operation of equitable conversion, normally the vendor's interest is considered to be personalty and the vendee's interest considered to be realty. *Frederick v. People's State Bank,* 385 N.W.2d 11, 13 (Minn.Ct.App.1986).

■ Equitable conversion is the constructive, not actual, change of personality into realty or of realty into personalty. *In re Estate of Hencke,* 212 Minn. 407, 420–21, 4 N.W.2d 353, 359 (1942). The doctrine was developed for the purpose of giving effect to the intention of testators, settlors or contracting parties. 27 Am.Jur.2d *Eq-*

*uitable Conversion* § 1 (1966). It is " 'a mere fiction of equity designed to effectuate the obvious intention of the parties and to promote justice' " which rests on the presumed intention of the owner of the property and the maxim that equity regards as done what ought to be done. *In re Bergman,* 585 F.2d 1171, 1177 (2d Cir. 1978), *quoting In re Maguire's Estate,* 251 App.Div. 337, 296 N.Y.S. 528, 529 (2d Dep't 1937) (emphasis omitted); *accord, Hencke, supra* 212 Minn. at 420–21, 4 N.W.2d at 359.

Viray argues that equitable conversion should not apply on the facts of this case because her interest is a real property interest "in the same way that a mortgage is a real property interest." Trial Brief in Support of Claim of Jeannine Mary Viray at 6. The issue must be analyzed in light of the purposes behind the filing requirement of section 6323(a). Notice by public filing is the means through which Congress sought to protect certain creditors and transferees from the broad priority power given to a federal tax lien. *See United States v. Gilbert Associates, Inc.,* 345 U.S. 361, 363–64, 73 S.Ct. 701, 703–04, 97 L.Ed. 1071 (1953) (noting that the purpose of a predecessor statute was to prevent priority of secret tax liens); *United States v. Hodes,* 355 F.2d 746, 749 (2d Cir.1966) (purpose of section 6323(a) "was to meet harsh effect of cases holding that a secret tax lien was good against a subsequent bona fide purchaser"), *cert. dismissed,* 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967).

A dispute very much like that at issue here was addressed in *United States v. Delaware Trust Co.,* 167 F.Supp. 465 (D.Del.1958). *Delaware Trust* concerned whether a notice of a federal tax lien in the state of the taxpayer's residence served to give the government priority over an assignee of the taxpayer's interest as the beneficiary of a trust consisting of real property located in another state. The court noted that, as a general rule, a trust composed entirely of realty was regarded as real property. 167 F.Supp. at 468. The government argued that, nevertheless, a beneficiary's interest in future income from

the trust was tantamount to personal property. 167 F.Supp. at 467. The court rejected the government's argument, reasoning that the filing requirement was intended to protect persons dealing in real property and that there was no justification for according the assignee of a beneficiary's interest in a trust of real property any lesser protection. 167 F.Supp. at 168.

■■■ The same reasoning applies in this case. The priority rules of section 6323(a) and (f) were enacted for the purpose of protecting, among others, the purchasers of realty against unrecorded tax liens. There appears to be no reason why that protection should not be accorded to a purchaser who receives a vendor's interest in a contract for deed. Consequently, equitable conversion will not operate to convert a vendor's interest in an executory contract for land from realty into personalty in the context of a priority dispute between a federal tax lien and the vendor's assignee.

### III. Whether a Notice of Levy Serves as an Alternative Method of Perfecting a Federal Tax Lien

■■■ The last arrow in the government's quiver is its argument that the notice of levy, which was served before Viray's interest was perfected, functioned to establish priority against all subsequent purchasers of Ponchik's interest in the contract for deed. This argument is based on the contention that a levy is an alternative method of perfecting a federal tax lien.

The United States cites *Rodriguez v. United States*, 629 F.Supp. 333, 340 (N.D. Ill.1986) and *In re Robby's Pancake House*, 24 B.R. 989, 997 (E.D.Tenn.1982) in support of its position. Both of those courts describe a levy as a constructive possession and, apparently reasoning from the fact that under Article 9 of the Uniform Commercial Code some security interests can be perfected by possession, conclude that a levy is an alternative means of perfecting a federal tax lien.

That conclusion is not consistent with a careful reading of the statute's relevant provisions. As the Supreme Court has noted,

The Internal Revenue Code's levy and seizure provisions ... are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 210–11, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983) (citations omitted). Nowhere do the levy and seizure provisions of the Code, sections 6331 and 6332, or the provision discussing priority and the filing requirements, section 6323, designate a levy as an alternative method of perfecting a federal tax lien.

*Southern Rock, Inc. v. B & B Auto Supply*, 711 F.2d 683, 686–88 (5th Cir.1983) thoroughly analyzes this issue. In that case, the United States Court of Appeals for the Fifth Circuit rejected the government's argument that a notice of levy perfected its interest in accounts receivable. The court began its analysis with section 6323(a), which establishes that a federal tax lien does not have priority over a perfected security interest until notice is filed in accordance with section 6323(f). Were the United States able to gain priority over all unperfected creditors and transferees through the service of a notice of levy, this section would, as the Fifth Circuit stated, "have little bite." 711 F.2d at 686.

■■■ Both section 6323 and the levy provision, section 6331, have "a meaningful role in the tax collection process" only if a notice of levy is not allowed to have the same effect as the filing of an effective notice of a federal tax lien. *Id.* at 687. A levy establishes the government's right to property relative to the taxpayer and requires that persons possessing property on which a levy has been made surrender that property to the government. 26 U.S.C. § 6332(a).

Thus, serving a notice of levy provides powerful incentives for the recipient of the notice to turn over the subject property to the government—something that the filing of a lien does not do. But a levy does not, as one leading commentator has noted, "determine whether the

taxpayer actually owes the taxes underlying the assessment, lien or levy; *nor does it determine whether the government's rights to the secured property are superior to those of other claimants, such as the taxpayer's other creditors."* 4 B. Bittker, Federal Taxation of Income, Estates and Gifts [par.] 111.5.5 (1981) (emphasis added). "The levy must be honored, even if the person in possession of the property has a lien superior to the government's tax lien; surrender of the property does not determine the priority of the liens, which can be settled in another forum." *Id.* 711 F.2d at 687.

This reading of the statute is consistent with the purpose of the filing requirement, to protect the creditors and transferees specified in section 6323(a) from an otherwise secret encumbrance. 711 F.2d at 687–88. Therefore, the Fifth Circuit concluded that the provisions of section 6323(a) and (f) are the exclusive means of perfecting a federal tax lien. 711 F.2d at 688. *Accord, State of Wisconsin v. Bar Coat Blacktop, Inc.,* 640 F.Supp. 407, 412–13 (W.D.Wis. 1986); *United States v. Jenison,* 484 F.Supp. 747, 755–57 (D.R.I.1980).

The reasoning of *Southern Rock* is persuasive and the Court likewise holds that a notice of levy does not provide an alternative means of perfecting a federal tax lien.

IV. *Conclusion*

Viray's interest in the interpleaded fund is superior to the federal tax lien. She is a purchaser within the terms of section 6323(a) who perfected her interest in real property prior to the filing of the notice of the federal tax lien in the office designated by the state where the property is physically located.

Accordingly, based on the foregoing, and upon all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that

1. summary judgment is granted in favor of Jeannine Mary Viray.

2. the interpleaded fund shall be paid to Jeannine Mary Viray.

LET JUDGMENT BE ENTERED ACCORDINGLY.