NOT FOR PUBLICATION
File Name: 07a0102n.06
Filed: February 8, 2007

No. 06-5608

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MPM FINANCIAL GROUP, INC.

      Defendant-Appellant,

MICHAEL P. MORTON,

      Defendant.

_____/

|  |
|---|
| ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

BEFORE:    GUY, SUHRHEINRICH and GRIFFIN, Circuit Judges.

PER CURIAM.  Defendant MPM Financial Group, Inc. appeals from the order of the district court granting summary judgment to the United States ("United States" or "Government") in this action brought by the Government under Internal Revenue Code § 6332(d) seeking to enforce an IRS levy served on MPM to collect codefendant Michael Morton's wages, and to impose a penalty under I.R.C. § 6332(d)(2) for failure to honor the levy. We affirm.

I.

Defendant MPM, an insurance agency, was a subchapter S corporation[1], formed in 1995 or 1996. It was co-owned by Morton, its president; Dale Baldwin, its treasurer/secretary; and Al

---

[1]According to the Government, this federal income tax classification is not relevant to this appeal. *See* I.R.C. §§ 1361-1379.

Prewitt, who acted as its chief executive officer. Baldwin was also designated as MPM's registered agent for service of process. Morton, Baldwin, and Prewitt agreed that Morton would manage the office, open mail, make bank deposits, and authorize payroll checks, while Baldwin and Prewitt would work outside of the office looking for new business and making sales calls. Baldwin testified in his deposition that, although he knew Morton had tax problems, he and Prewitt trusted him.

Morton owed $104, 009.54 in unpaid federal income taxes and penalties for his 1989-1995 tax years. On or about August 23, 2000, the IRS mailed a notice of levy to MPM, levying upon wages payable to Morton.[2] The IRS sent the levy to MPM by regular mail, not certified or registered mail, at its business address, 3080 Harrodsburg Road, Suite 101, Lexington, KY 40513.

Morton, as the principal at MPM who opened the office mail, received the notice of levy. Morton did not tell Baldwin or Prewitt about the levy, however, and did not comply with the levy's instructions to withhold a portion of Morton's income and remit the same to the IRS.

In the meantime, the IRS continued to deal directly with Morton in attempting to collect his unpaid tax liabilities. On or about June 21, 2001, Morton made an offer of compromise to the IRS concerning his tax liability. At that point the IRS, pursuant to its own regulations, released the levy sent to MPM. Notwithstanding, the IRS was unable to collect the unpaid federal taxes Morton owed for the years 1989-1995.

On February 14, 2002, Morton was removed from his position as MPM's president, and Baldwin replaced him.

---

[2]The levy states in bold print: "**THIS ISN'T A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE.**"

On January 16, 2004, the Government brought suit against MPM under I.R.C. § 6332(d)(1), seeking to hold MPM liable for the amount of the levy it had refused to honor, and further requesting that MPM be held liable for penalties under § 6332(d)(2) for its failure to honor the levy. The district court granted summary judgment to the Government. The court held that MPM did not attempt, let alone meet, either of the two defenses available for failure to honor a levy. The court further held that MPM was liable for the § 6332(d)(2) penalty for its failure to honor the levy, because it failed to establish reasonable cause for the failure. The district court entered a judgment in favor of the Government for $29,233.25, plus a penalty of $14,616.62, plus post-judgment interest. The Government filed a motion to reconsider the district court's calculation of MPM's tax obligation. The district court granted the motion, and increased the total judgment to $77,058.78.

On appeal, MPM claims that by sending the notice of levy by regular, rather than certified or registered mail, the IRS failed to meet due process and other legal requirements.

## II.

Section 6331 of the Internal Revenue Code provides that "if any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand," the IRS may collect the tax by levy upon all property or rights to property of the delinquent taxpayer. 26 U.S.C. § 6331(a). Section 6332 further provides (with certain exceptions not relevant in this case) that any person in possession of property or rights to property belonging to a delinquent taxpayer upon which a levy has been made, shall, upon demand, surrender such property or rights to property to the IRS. 26 U.S.C. § 6332(a). Section 6332(d)(1) provides that any third party who possesses property or rights to property belonging to a delinquent taxpayer which are subject to levy, and who fails or refuses to surrender the property on demand shall be liable to the United States in a sum equal to the value of

3

the property or rights subject to the levy.  26 U.S.C. § 6332(d)(1).  Section 6332(d)(2) imposes a 50% penalty of the amount of the third party's liability under § 6332(d)(1) if the failure to honor the levy is without reasonable cause.

There are two–and only two–defenses for failure to honor a levy:  (1) that the third party possesses no property or rights to property belonging to the taxpayer; or (2) that any such property is subject to prior judicial attachment or execution.  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721-22  (1985); *United States v. Gen. Motors Corp.*, 929 F.2d 249, 251 (6th Cir. 1991); *State Bank of Fraser v. United States*, 861 F.2d 954, 958-59 (6th Cir. 1988); *United States v. Weintraub*, 613 F.2d 612, 620 (6th Cir. 1979).[3]

MPM did not attempt to invoke either exception, and as the district court held, none is applicable here.  It is undisputed that MPM possessed money belonging to Morton in the form of wages payable to him, and there is no evidence to suggest that this property was subject to prior judicial attachment or execution.  Thus, under § 6332(d)(1), MPM is liable as a matter of law for failing to honor the levy.

MPM nonetheless claims the IRS violated its due process rights when it sent the levy by regular mail instead of certified or registered mail to its registered agent for service of process, Dale E. Baldwin.  MPM also claims that it was deprived of due process because the IRS did not contact

---

[3]In its brief the Government cites footnote 29 of *United States v. Weintraub*, 613 F.2d 612, (6th Cir. 1979) for the proposition that a "challenge to procedural validity of levy does not constitute defense for failure to honor the levy").  *Weintraub*, 613 F.2d at 620, n.29.  Footnote 29 actually states that "[i]t is also no defense that there was no valid levy against the taxpayer.  That is a matter for the taxpayer to raise."  *Id.* (citing *Commonwealth Bank v. United States*, 115 F.2d 327, 329 (6th Cir. 1940)).
Here of course, it is the third party who is seeking to raise the defense of no valid levy.

4

it prior to issuance of the levy to investigate the subject property, as required by 26 U.S.C. § 6331, and that the IRS failed to comply with internal procedures in the way it processed this levy.

MPM's argument rests on the faulty premise that the IRS delivered the notice of levy to Morton (and therefore it did not receive notice).[4] Contrary to MPM's assertion, the IRS mailed the notice to MPM at its business address.[5] It did so by regular mail, in compliance with the notice requirement of § 6331(a). Section 6331(d)(2) provides that the notice required under paragraph § 6331(d)(1) shall be

(A) given in person,

(B) left at the dwelling or usual place of business of such person, or

(C) sent by certified or registered mail to such person's last known address, no less

than 30 days before the day of the levy.

26 U.S.C. § 6331(d)(2). *See also* Treas. Reg. § 301.6331-1(c) ("A notice of levy may be served by mailing the notice to the person upon whom the service of a notice of levy is authorized . . . ."). The notice of levy here was mailed to MPM and was thus served in strict compliance with the

---

[4]"The constitutionality of the levy procedure, of course, 'has long been settled.'" *Nat'l Bank*, 472 U.S. at 721 (quoting *Phillips v. Commissioner*, 283 U.S. 589, 595 (1931)). It is also axiomatic that before the government may seize property in return for unpaid taxes, "the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 126 S. Ct. 1708, 1712 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Notice is deemed "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Id.* at 1714.

[5]Because the notice of levy was mailed to MPM itself, and not to Morton, MPM's agency discussion is irrelevant.

requirements of the Internal Revenue Code and the Treasury Regulations.[6]   Further, as the district court noted, it is undisputed that Morton, the party responsible for opening MPM's mail, received the levy and decided not to comply with it.  Thus, as the district court held, the act of mailing the levy to MPM by regular mail at its usual place of business complies with 26 U.S.C. § 6331(d)(2)(B). MPM's assertion that the IRS should have served the levy on its registered agent for service of process, Dale Baldwin, is unavailing because 26 U.S.C. § 6331(d)(2) does not specify that service of a levy must be made on an agent for service of process.

MPM faults the IRS for "handing over" the notice of levy to Morton since the IRS had reason to know that Morton was untrustworthy.  MPM asserts that Paul Hert, the IRS agent assigned to the case, knew that Morton was uncooperative and untrustworthy, and that upon learning that Morton had received the levy on behalf of MPM, Hert should have attempted to contact the other directors of MPM.  MPM claims that Hert added insult to injury by hand-delivering a Final Demand to Morton at MPM's office.  Notwithstanding, MPM granted Morton unbridled authority to dispose of its mail; MPM cannot shift the blame to the IRS for an ill-advised business practice.  In other words, MPM must bear the consequences of Morton's malfeasance because MPM agreed to conduct its business in that manner.

MPM relies on *Jones v. Flowers*, 126 S. Ct. 1708 (2006).  In *Jones*, the Supreme Court held that "when [a] mailed notice of a tax sale is returned unclaimed," the Due Process Clause of the Fourteenth Amendment requires the taxing authority to "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.*

---

[6]For this reason, MPM's assertion that § 6332 and the decision of *United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985) and progeny are inapplicable where no notice of levy has been served, is inapposite.

6

at 1713-18. Jones, a homeowner who did not reside at that address, made the mortgage payments but failed to pay the property taxes after the mortgage was paid off. *Id.* at 1710. The Commissioner of State Lands of the State of Arkansas "mailed Jones a certified letter at the property's address, stating that unless he redeemed the property, it would be subject to public sale in two years." *Id.* Nobody was home to sign for the letter and it was not retrieved at the post office. Two years later, the Commissioner published a notice of public sale in a local newspaper, and negotiated a private sale to respondent Flowers. *Id.* Because the state in that case had sent notice by certified mail and the mail had been returned undelivered, the Court held that the state should have followed up with notice by regular mail, since regular mail may be more likely to be received by a party who is not at home during the day or who has moved. *Id.* at 1718-19. The Court also noted that other options included posting notice on the door of the property or addressing regular mail to "occupant," which might have caught the absent owner's attention at the end of the day. *Id.*

As the Government asserts, MPM's reliance is misplaced. First and foremost, MPM did receive the notice of levy. The notice was mailed to, and received by, MPM. Unlike *Jones*, it was not returned to the IRS by the Postal Service as "undeliverable." Second, the notice in this case was not designed to notify MPM of an impending deprivation of its property. Rather, the notice was merely a demand that MPM turn over Morton's wages to the Government to satisfy Morton's tax liabilities. Third, MPM was not denied notice or opportunity to be heard in this case.

Regarding the penalties imposed, the Government contends that MPM failed to preserve this issue on appeal, because MPM does not argue it had reasonable cause for failing to honor the levy and thus should not be subject to penalties for failing to honor the levy, citing *inter alia Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002) (explaining

7

that such conclusory arguments, without any further discussion or citation of authority are waived on appeal). Notwithstanding, MPM arguably preserved the argument that the IRS improperly imposed a penalty. *See* App'ant's Br. at 9 ( "At a minimum, the IRS's improper service of the Notice of Levy and Final Demand make the assessment of a penalty inappropriate, since MPM's failure to respond to the levy documents was clearly based on reasonable cause."); *id.* at 17 ("Even if this narrow view of due process is correct, it cannot apply to the assessment of a penalty against MPM equaling 50% of the levied amount."); *id.* at 25 (" . . . the case is totally irrelevant to the question of whether MPM may be assessed a penalty under 26 U.S.C. § 6332. *See United States v. Donahue*, 905 F.2d 1325 (9th Cir. 1990) (noting that "serious deficiencies in the levy notices may call into question the legal effectiveness of the levy, and give reasonable cause for failing to honor the levy" such that a penalty cannot be assessed").

In any event, any argument it does make is based on the erroneous contention that it was not properly served with the notice of levy in order to avoid the penalties. MPM's failure to honor the levy was not due to reasonable cause. MPM failed to honor the levy because Morton, its president, who had been granted authority to open company mail, improperly disposed of the notice of levy. The notice had been mailed to MPM at its business address, and it was actually received by MPM in the ordinary course of its business operations. *Cf.* 26 C.F.R. § 301.6332-1(b)(2) (defining "reasonable cause" as a bona fide dispute concerning the amount to be surrendered or the legal effectiveness of the levy); *see also United States v. AmSouth Bank*, 947 F. Supp. 459, 461-62 (M.D. Fla. 1996). MPM's lack of internal controls cannot amount to reasonable cause for failing to honor the levy. It therefore follows that the penalty was properly imposed in this case. As the district court observed:

While this penalty may appear to MPM to add insult to injury in this particular case, MPM must keep in mind that if there had been a system of checks and balances in place at its office at the time this levy was served to MPM, it is unlikely that Morton, the truly culpable party in this situation, would have been able to keep this notice of levy from coming to the attention of either Al Prewitt or Dale Baldwin, MPM's two other principals and owners. It is not the fault of the government that the organizational structure at MPM and/or a lack of a system of checks and balances at MPM created the environment at MPM where the conduct of Morton could occur unbeknownst to MPM's two other owners.

To allow such conduct to constitute reasonable cause would undermine "[t]he underlying principle justifying the administrative levy"; namely "the need of the government promptly to secure its revenues." *Nat'l Bank*, 472 U.S. at 721. "'Indeed, one may readily acknowledge that the existence of the levy power is an essential part of our self-assessment tax system,' for it 'enhances voluntary compliance in the collection of taxes.'" *Id.* (quoting *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350 (1977)).

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**